(907 P.2d 144)

No. 71,977

STATE OF KANSAS, *Appellee,* v. EOTIS O. JOHNSON, JR., *Appellant.*

Opinion filed June 30, 1995.

*B. Kay Huff,* special appellate defender, and *Jessica R. Kunen,* chief appellate defender, for appellant.

*James A. Brown,* assistant district attorney, *Joan M. Hamilton,* district attorney, and *Robert T. Stephan,* attorney general, for appellee.

Before GREEN, P.J., GERNON, J., and THEODORE B. ICE, District Judge, assigned.

ICE, J.: Defendant Eotis O. Johnson, Jr., appeals from his conviction for aggravated robbery, challenging the sufficiency of the evidence supporting the jury's verdict. Johnson also alleges the trial court erred by allowing the State to cross-examine him about his

prior misdemeanor theft convictions. We disagree and affirm the judgment of the trial court.

One spring evening in 1993, Steven Harvey was working behind the counter at a Kwik Shop. At approximately 1:45 a.m., a man entered the store and approached the counter. The man picked up a package of Sundance cigarettes, placed them on the counter, and handed Harvey two dollars. Harvey noticed a knife folded up in the man's hand. When the man demanded the money from the register, Harvey placed the register drawer on top of the counter. The thief fled with the money and the cigarettes.

First, Johnson argues that the evidence was insufficient for the jury to find him guilty beyond a reasonable doubt. The standard of review on appeal is "whether, after review of all the evidence, viewed in the light most favorable to the prosecution, the appellate court is convinced that a rational factfinder could have found the defendant guilty beyond a reasonable doubt." *State v. Timley*, 255 Kan. 286, Syl. ¶ 13, 875 P.2d 242 (1994).

Johnson points to several alleged discrepancies between his identification by Harvey and his actual appearance. Although there were some minor inconsistencies in the description of clothing that Harvey said the robber was wearing as compared to the clothing Johnson was wearing when he was arrested, these inconsistencies did not make the overall identification inaccurate. Moreover, other significant evidence linked Johnson to the crime. For example, Johnson was stopped less than a block away from the robbery. Also, the police search of Johnson disclosed a knife similar to the one used in the robbery, 14 one-dollar bills, and an unopened pack of Sundance cigarettes.

Our Supreme Court has held that circumstantial evidence can adequately support a conviction. See *State v. Clemons*, 251 Kan. 473, 487-88, 836 P.2d 1147 (1992). Viewing the evidence in the light most favorable to the prosecution, and considering Harvey's eyewitness identification of Johnson together with the significant circumstantial evidence linking Johnson to the crime, it is clear that a rational factfinder could have found Johnson guilty beyond a reasonable doubt.

Next, Johnson argues the trial court erred in allowing the admission of his previous convictions. K.S.A. 60-421 states:

"Evidence of the conviction of a witness for a crime not involving dishonesty or false statement shall be inadmissible for the purpose of impairing his or her credibility. If the witness be the accused in a criminal proceeding, no evidence of his or her conviction of a crime shall be admissible for the sole purpose of impairing his or her credibility unless the witness has first introduced evidence admissible solely for the purpose of supporting his or her credibility."

Because this issue involves an interpretation of K.S.A. 60-421, our standard of review is unlimited. See *State v. Donlay*, 253 Kan. 132, Syl. ¶ 1, 853 P.2d 680 (1993). Accordingly, we are not bound by the decision of the trial court. See *Memorial Hospital Ass'n, Inc. v. Knutson*, 239 Kan. 663, 668, 722 P.2d 1093 (1986).

On direct examination, Johnson stated that he knew what it meant to take an oath and to swear to tell the truth. Johnson also testified that he was presently telling the truth. The trial court held that by taking the witness stand, Johnson placed his credibility in issue. We disagree.

The law is well established that a criminal defendant does not place his or her credibility in issue, as contemplated by K.S.A. 60-421, merely by taking the witness stand. See *State v. Harris*, 215 Kan. 649, 651, 527 P.2d 949 (1974); *State v. Motley*, 199 Kan. 335, 338, 430 P.2d 264 (1967); see also *State v. Macomber*, 241 Kan. 154, 157, 734 P.2d 1148 (1987) (a defendant must have the right to testify and deny the charges against him or her without fear such testimony will make evidence of prior crimes admissible). "The purpose of K.S.A. 60-447, in combination with K.S.A. 60-421, is to permit a defendant to testify in his or her own behalf without having a history of past misconduct paraded before the jury." See *State v. Blackburn*, 251 Kan. 787, 790, 840 P.2d 497 (1992) (citing *State v. Stokes*, 215 Kan. 5, 7, 523 P.2d 364 [1974]). Consequently, the trial court erred in allowing prior crimes evidence based on Johnson's decision to testify. Nevertheless, "[t]he judgment of a trial court, if correct, is to be upheld even though the court may have relied upon a wrong ground or assigned an erroneous reason for its decision. (Citations omitted.)" *State v. Wilburn*, 249 Kan. 678, 686, 822 P.2d 609 (1991).

The admission of the prior crimes evidence would have been proper if Johnson first introduced evidence solely for the purpose of supporting his credibility. Here, while on direct examination, Johnson emphasized to the jury that he knew what it meant to take an oath and to tell the truth and that he was presently telling the truth. Undoubtedly, Johnson's testimony was solicited to support his credibility.

While Kansas courts have not ruled directly on this point, our Supreme Court has previously determined that a defendant put his character and credibility in issue when he testified that he was an ordained minister and that he had done charitable works. See *State v. DeLespine*, 201 Kan. 348, 350, 440 P.2d 572 (1968). Likewise, when Johnson, unsolicited by the prosecution, emphasized on the witness stand that he was then telling the truth, we believe Johnson's testimony was solely offered for the purpose of supporting his credibility. As a result, Johnson opened the door to being cross-examined about his previous convictions involving dishonesty or false statements.

Affirmed.